## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| TEDRIC L. FREMONT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIV. A. NO. 25-0044-JB-MU |
| | ) | |
| DR. FREDRICKS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

### REPORT AND RECOMMENDATION

Plaintiff Tedric L. Fremont, who is proceeding without counsel (*pro se*) and without prepayment of fees (*in forma pauperis)*, filed an amended complaint against Dr. Fredricks, NaphCare, Inc., and the Alabama Department of Corrections. (Doc. 16). This action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and S.D. Ala. GenLR 72(a)(2)(R). Upon careful review of the complaint (Doc. 16), the undersigned finds that this action is frivolous and fails to state a claim and **RECOMMENDS** that this action be **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

### I. Background and Complaint Allegations

Plaintiff initiated this action in June 2024, in an attempt to "reopen" a civil suit filed in 2020. The suit challenged the administration of psychiatric medication while in custody of the Alabama Department of Corrections (ADOC). (*See* Docs. 1, 2, 4; *see also* 20-cv-00223-JB-N, S.D. Ala.). Because Plaintiff's 2020 action was dismissed without prejudice and closed in 2021, the Court denied Plaintiff's motion to reopen the action (Doc. 4), but Plaintiff was allowed to file his complaint as a new civil action and

was provided the chance to clarify his allegations to state an actionable claim, if possible. (Doc. 5). The Court, however, explained to Plaintiff that his complaint, which presented the same facts asserted in his previous lawsuit, was time barred by Alabama's statute of limitations. (*See* Doc. 8). Though afforded the opportunity, Plaintiff failed to show why the statutory limitations period should be tolled or stopped so that he could proceed with his current claims and action. (*See* Docs. 9, 11). Accordingly, Plaintiff was instructed in drafting an amended complaint to present claims that occurred after June 2022, which would be within the limitations period. (*See* Doc. 11 at 5). In response, Plaintiff filed the amended, operative complaint which is now before the Court. (*See* Doc. 16).

In his complaint, Plaintiff again recounts the January 2018 actions of Dr. Fredricks which he claims "started" and led to the "consequences that Plaintiff Tedric L. Fremont still is undergoing, such as the [case against him in Creola, Alabama.]" (*Id*. at 8). Plaintiff states that while at Frank Lee Work Center, he participated in a Skype interview with Dr. Fredricks, (1) where Dr. Fredricks "read from wrong file/jacket;" (2) asked him about a "rape case" (that did not exist); and (3) asked him about participating in a sleep study - "which led to miss or near miss of death" where Plaintiff "was hid in a van in 100 degree conditions and driven [from Frank Lee Work Center] lying on the seat and floor board to a far away location and left their[sic], unoccupied for 4 days without seeing a nurse, Doctor, vitals check, blood pressure check nor even a welfare check until the 4 (fourth) Day where Plaintiff was found by [Kilby Correctional Center] staff that knew Plaintiff." (*Id*. at 5, 9; *see also id*. at 16). Plaintiff alleges that there is a "cover-up of the wrong medicating, Dr. visits, THE BLATANT LIE of a sleep observation turned near

miss with death almost occurring and the suspended notion that Plaintiff was a [psych patient]...." (*Id*. at 9). Plaintiff alleges that the wrongful medication prescribed by Dr. Fredicks has continued with his "victimization through Probate Courts," here he has been prescribed Abilify and made to attend therapy sessions, following "a bogus menacing charge" from Creola, Alabama (*Id*. at 12) (cleaned up). According to Plaintiff, he was picked up from his home by law enforcement on November 14, 2018, and taken to Eastpointe Hospital until November 20, 2018, "which Plaintiff believes that was done in an attempt to clarify or cover-up Dr. Fredericks[sic] wrongful acts or doing of stepping out of a strict moral code and becoming an adversary by falsely mis medicating and lying to Plaintiff of a sleep observation that turned DEADLY!!" (*Id*. at 12). Plaintiff asserts that the therapy sessions he is forced to attend by court order and the fines imposed are "harsh" and "excessive." (*Id*. at 13). Plaintiff further challenges the representation of his appointed counsel during the probate "sentencing." (*Id*.). Plaintiff repeatedly refers to the November 2018 arrest in Creola, Alabama and asserts allegations associated with the lack of cause for the arrest, the conditions of his confinement, and force used against him by Officers Nelson and Duffie while jailed. (*Id*. at 18-20). Plaintiff alleges he "was eventually taken to Alta Pointe and cleared by a doctor there of any Mental Illness...." (*Id*. at 20; *see also id*. at 40-42).

      Plaintiff claims his January 4 through January 15, 2019, psychiatric hospitalization was due to Dr. Fredricks' "attempt to obscure the reputation of Plaintiff to create a sense of mental health record to fluff conditions that aid in the covering of a mis medicating." (*Id*. at 15).

Plaintiff also alleges that he remained "held in Mobile, AL Metro Jail for 25 + months after making a $10,000 ten thousand dollar bond . . . where he was probated again sent to hospital for evaluation." (*Id*. at 20-21). Based on complaint allegations, it appears that this hospitalization was Plaintiff's most recent, from May 7, 2025, to May 20, 2025. (*Id*. at 17). Plaintiff claims he was "evaluated for reason of insanity" at East Pointe hospital, *id*., and then "placed after application in a Group home setting where he lives now currently awaiting trial for the charge of theft of property." (*Id*. at 20-21). However, in support, Plaintiff attaches a Defendant History Sheet that confirms the date of arrest for the "theft of property charge" was "1/26/2019" and shows the case was dismissed on "5/21/2019." (*Id*. at 32). Plaintiff also attaches requests for medical information that appear to possibly relate to past injuries or surgeries that occurred while in custody from July 2017 through April 2018. (*See Id*. at 39).

In the end, Plaintiff opines that "Its obvious [Dr. Fredricks] had the wrong person and went on with Skype Interview and Medicating regardless of the outcome" which led to further actions taken by law enforcement to continue the "coverup" after Plaintiff filed his civil case, including "being harassed by Police stopping in front of his home blaring lights but not stopping for arrest, . . . pulling him over at least 7 times with no arrest nothing seized nor found nor warrant coming back, . . . pulled over 4 times after work in one week, . . . ." (*Id*. at 16; *see also id.* at 17-18). In support of this allegation, Plaintiff references tickets and offenses from 1995 until 2018 (*Id*. at 17) and being picked up by the constable and forced to go to the hospital on November 14, 2018, January 4, 2019, and May 7, 2025. (*Id*. at 24). And Plaintiff further complains that he is still being harassed by Creola Police Officers Nelson, Witzell, and Taylor and claims Police Chief

Doug Kirkland refused to provide him with requested copies of records that cleared him of mental illness, putting his litigation at risk and making Plaintiff suffer loss of job and family. (*Id*. at 21-22).

Plaintiff is suing Dr. Fredricks for "mismedicating[sic], negligence, violating Plaintiff medical rights/civil right" in January 2018. (*Id*. at 5). Plaintiff is suing NaphCare, Inc., the medical provider for the ADOC, for the actions of its employee, Dr. Fredricks, and for "no medical oversight or caretaking the whole time, left for dead." (*Id*.). And Plaintiff is suing ADOC for the wrongful medication, being "left in lock up for over 3 days with no Doctor, Nurse or follow-up in dark dingy cell, left for dead." (*Id*. at 6). Plaintiff requests that the Court "rid Plaintiff of any mental health records that have been trumped up behind the mismedicating[sic] and award him 3 million dollars." (*Id*. at 7, 25).

## II. **Standard of Review Under 28 U.S.C. § 1915(e)(2)(B)**

Because Plaintiff is proceeding without the prepayment of fees, his complaint is subject to review under § 1915(e)(2)(B)(i)-(iii), which requires dismissal of a complaint, or any portion of the complaint, that the Court finds (1) is frivolous or malicious, (2) fails to state a claim upon which relief may be granted, or (3) seeks monetary relief against a defendant immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B)(i)–(iii).

Pertinent here, a claim may be dismissed as "frivolous where it lacks an arguable basis in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim is frivolous as a matter of law where, among other things, the defendants are immune from suit, *id.* at 327, the claim seeks to enforce a right that clearly does not exist, *id.*, or an affirmative

5

defense (such as the statute of limitations) would defeat the claim, *Clark v. State of Ga. Pardons & Paroles Bd.*, 915 F.2d 636, 640 n.2 (11th Cir. 1990).

To avoid dismissal for failure to state a claim upon which relief may be granted, the allegations must show plausibility. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and must be a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" *Twombly*, 550 U.S. at 555, 557 (second brackets in original) (quoting Fed. R. Civ. P. 8(a)(2)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

In reviewing Plaintiff's *pro se* complaint, the Court liberally construes his allegations, holding them to a more lenient standard than those drafted by an attorney. *See Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam). However, this leniency "does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168–69 (11th Cir. 2014) (quotation marks and citation omitted). Furthermore, the Court "accepts the complaint's factual allegations as true," *Daker v. Ward*, 999 F.3d 1300, 1307 (11th Cir. 2021), but it does not treat as true conclusory assertions or a recitation of a cause of action's elements. *Iqbal*, 556 U.S. at 680-81. As a *pro se* litigant, Plaintiff is still "subject to the relevant law

6

and rules of court, including the Federal Rules of Civil Procedure." *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989).

### III. Discussion

In his complaint, Plaintiff challenges the actions of Defendants Dr. Fredricks, NaphCare, Inc., and ADOC for wrongful administration of psychiatric medication to him in January of 2018. These claims, no matter how they are construed, are time barred.

In Alabama, the statute of limitations for a § 1983 action is two years. *Lufkin v. McCallum,* 956 F.2d 1104, 1106, 1108 (11th Cir.), *cert. denied,* 506 U.S. 917 (1992); Ala. Code § 6-2-38. Therefore, to have his claim heard, Plaintiff was required to bring the claim within *two years* from the date that the limitations period began to run. "It has long been the law of [the Eleventh] Circuit that in § 1983 actions 'the statute of limitations does not begin to run until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights.'" *McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008) (quoting *Mullinax v. McElhenney*, 817 F.2d 711, 716 (11th Cir. 1987)).

In the present action, Plaintiff knew or should have known of his claims against the defendants at or near the time of the alleged incident. Nevertheless, Plaintiff filed the present action on June 13, 2024,[1] more than six years after his claim accrued. (Doc. 1 at 7). Accordingly, Plaintiff's action is barred by the two-year statute of limitations. For this reason, Plaintiff's action is due to be dismissed for failure to state a

---

[1] Plaintiff signed his complaint on June 13, 2024, though it was not received and docketed by the Court until February 3, 2025. (*See* Doc. 1). "Under the prison mailbox rule, a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." *Jeffries v. United States*, 748 F.3d 1310, 1314 (11th Cir. 2014) (citation omitted).

7

claim upon which relief can be granted. *Jones v. Bock,* 549 U.S. 199, 215 (2007) (when an affirmative defense, such as a statute of limitations, appears on the face of a complaint, a complaint is subject to dismissal under 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim); *Clark v. Georgia Pardons & Paroles Bd.,* 915 F.2d 636, 640 n. 2 (11th Cir.1990) (when an affirmative defense would defeat a claim, such as the statute of limitations, the claim may be dismissed as frivolous).

To the extent Plaintiff attempts to challenge more recent arrests, psychiatric evaluations, and involuntary commitments on November 14, 2018, January 4, 2019, and May 7, 2025, or link these to Dr. Fredricks's 2018 "illegal" administration of medication, Plaintiff has failed to state a claim upon which relief may be granted. For the reasons previously discussed, the 2018 and 2019 incidents are time barred. As to the May 2025 hospitalization, it is unclear what claims or causes of action he is asserting, whether conspiracy, unreasonable search and seizure under the Fourth Amendment, due process pursuant to the Fourteenth Amendment, or cruel and unusual punishment under the Eighth Amendment. *See Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 330-31 (1986) (To state a § 1983 claim, the complaint must show a state actor deprived the plaintiff of "his rights, privileges, or immunities secured by the Constitution or laws of the United States."). Most fatal, beyond conclusory allegations, Plaintiff has provided no facts which show or suggest a causal connection between Dr. Fredricks's administration of psychiatric medication to Plaintiff's subsequent arrest(s) or psychiatric hospitalization(s). *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986) (per curiam) (The § 1983 complaint must show a *causal connection* between *each* defendant's

actions, orders, customs, or policies and a deprivation of the plaintiff's constitutional or federal rights to state a claim.). Stated another way, the incident that is alleged to have occurred in January 2018 is not plausibly connected to his being "picked up by Constable and forced to go to hospital on Nov. 14, 2018 thru Nov. 20, 2018, and Jan. 4, 2019 thru Jan. 15, 2019, and again May 7, 2025 thru May 20, 2025." (Doc. 16 at 24) (cleaned up). There are no facts that can be traced back through his commitments to Dr. Fredricks or that show any specific connection between the actions of Dr. Fredricks and the actions of subsequent law enforcement, courts, or hospitals. Instead, the incidents appear to be unrelated and remote in time to the January 2018 administration of psychiatric medication.

Lastly, Plaintiff's challenges to his subsequent civil commitments are barred by the rule announced in in *Heck v. Humphrey*, 512 U.S. 477 (1994), that a plaintiff cannot maintain a §1983 suit if a favorable ruling would undermine or invalidate the plaintiff's conviction or sentence. *See Hall v. Merola*, 67 F.4th 1282, 1290–91 (11th Cir. 2023). This means a plaintiff is prevented from suing under § 1983 "unless and until" the conviction has been ruled invalid. *See Heck*, 512 U.S. at 486–87. The *Heck*-bar applies to civil commitments, as well as criminal convictions. *Hall v. Porfert*, No. 22-12184, 2023 WL 6274833, at *1 (11th Cir. Sept. 26, 2023). Because Plaintiff has not shown that his convictions or commitments have been "reversed..., expunged..., declared invalid..., or called into question by a federal court's issuance of a writ of habeas corpus," *Heck*, 512 U.S. at 487, and his claim for damages in this action would necessarily imply the invalidity of his charges, conviction, sentence, or commitment, his

claims are precluded by the principles set out in *Heck* and due to be dismissed as frivolous.

## IV. Conclusion

For the reasons discussed above, Plaintiff's complaint is due to be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii) because it is frivolous and fails to state a claim. Generally, "[w]here a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice." *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991) (per curiam), *overruled in part by Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 & n.1 (11th Cir. 2002) (en banc) (overruling *Bank*'s one-chance-to-amend rule as to counseled parties). Here, Plaintiff has been given a chance to amend his complaint. To allow further amendment would be futile as it does not appear that any set of facts will make Plaintiff's claims fall within the two-year statute of limitations. In addition, Plaintiff cannot proceed on a challenge to his commitments via a § 1983 action until and unless he can show that his hospitalization orders have been invalidated in some way. *See Heck*, 512 U.S. at 487, 48. Accordingly, Plaintiff need not be permitted another opportunity to amend. *Nezbeda v. Liberty Mut. Ins. Corp.*, 789 F. App'x 180, 183 (11th Cir. 2019) (per curiam) ("The district court may dismiss a plaintiff's claims sua sponte—without requiring or permitting the plaintiff to amend—if it concludes that the claims are frivolous."); *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007) (leave to amend is futile where the amended complaint would not survive a motion to dismiss).

Based upon the foregoing reasons, it is **RECOMMENDED** that Plaintiff's amended complaint (Doc. 16) be **DISMISSED WITHOUT PREJUDICE**, prior to service of process, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii) because it is frivolous and fails to state a claim.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely

incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

    **DONE** this 21st day of October, 2025.

                                          **/s/ P. BRADLEY MURRAY**
                                          UNITED STATES MAGISTRATE JUDGE